HUTTON v. McCLESKEY.

Opinion delivered February 11, 1918.

1.  CONSTITUTIONAL LIMITATIONS—REMISSION OF PENALTIES—POWER OF GOVERNOR.—The power granted the Governor of the State by section 18, article 6, of the Constitution of 1874, to remit fines and forfeitures, as well as the power to grant reprieves, commutations and pardons, is confined to criminal and penal cases, after conviction or judgment.

2.  CONSTITUTIONAL LIMITATIONS—POWER OF THE GOVERNOR—REMISSION OF PENALTIES.—The power of the Executive is limited to the extension of clemency to individuals under sentence or judgment for crime, penalty or forfeiture, and does not reach to granting of general amnesties, nor relief from civil penalties and forfeitures.

3.  CONSTITUTIONAL LIMITATIONS—POWERS OF GOVERNOR—TAXATION—REMISSION OF PENALTIES.—The Governor is without authority to remit the penalty imposed by the act of 1917, page 1237, against delinquent property owners for failure to assess for taxation, and such delinquents can claim no relief under such proclamation.

4.  TAX COMMISSION—REMISSION OF PENALTY.—The State Tax Commission is without authority to relieve delinquent property owners from the penalty imposed by the act of 1917, page 1237.

Appeal from Pulaski Circuit Court, Third Division; G. W. Hendricks, Judge; reversed.

Rose, Hemingway, Cantrell, Loughborough & Miles, for appellant.

1.   The Governor had no power to pardon the penalty. The powers conferred by the Constitution are limited to criminal and penal cases and do not extend to liabilities under the revenue laws. Const. 1874, Art. 12, § 2; 26 Ark. 74-6-7; 117 Fed. 448; 13 Wall 128-139; 20 Id. 92; 211 Fed. 493.

2. The penalty under Act 1917 was not a fine nor forfeiture, and did not fall within the Governor's power to remit. 114 S. W. 255; 2 Bouvier, 2871; 117 Fed. 448; 454; 57 S. W. 713; 116 *Id.* 1197; 112 N. W. 585.

3. An executive act of amnesty is, in effect, a suspension of a State law, contrary to Sec. 12, Art. 2 of the Constitution. 7 Peters 150; 53 Fed. 238; 26 Ark. 74; 47 S. E. 403; 71 S. W. 52, 60; 13 Wall. 128, 148; 20 *Id.* 112.

*S. L. White* and *Will G. Akers,* for appellee.

1. The court will give a liberal construction ·to a grant of power to the end that justice and freedom from oppression may be uniformly attained. The Governor had power to remit the penalty. 6 Cranch, 87; 12 Wheaton, 213; 76 Ark. 197.

2. The effect is not a suspension of a law but a remission of a penalty. 15 Ark. 427, 431; 24 A. & E. Enc. L. (2d Ed.) 566; 41 Am. St. 663; 40 S. E. 142; 1 How. (Miss.) 596; 11 Ga. App. 564; 92 S. W. 191.

3. The power is not limited to penal cases where judgment has been pronounced by a court. The proclamation is not contrary to Art. 2, § 12, Const. 175 Fed. 238, 242; 15 Ark. 427, 430; 29 Cyc. 1560; 71 S. W. 52; 13 Wall. 128; 175 Fed. 238, 242.

4. The Tax Commission had power to make the order. Const. Art. 16, § 5; 127 Ark. 349; Acts 1909, No. 257, § 11, etc.

McCULLOCH, C. J. The General Assembly of 1917 enacted a statute changing the method of assessing property for taxation, and, among other changes in the law imposed a penalty of twenty-five per centum on the taxes of any delinquent property owner who failed to assess his property for taxation within the time and in manner prescribed by the statute. Acts of 1917, p. 1237.

On January 2, 1918, the Governor of the State issued a proclamation containing a recital that there had been many delinquencies in the assessment of taxes for the year 1917, which were unintentional and not wilful, and declaring a remission of all penalties for such delin-

quencies down to the sum of $1.00, "but in no way inter-
fering," so runs the language of the proclamation, "with
the minimum penalty of $1.00 to be paid to the township
members for the listing of delinquents."

The plaintiff. McCleskey is the owner of property in
Pulaski County, and was among the list of delinquents.
He made an offer to the collector to pay his taxes with-
out penalty, and on refusal of that officer to accept the
payment and give a full receipt without the payment of
penalty, he instituted this action in the circuit court of
Pulaski County to compel the collector, by mandamus, to
do so.

The State Tax Commission also issued a general
order undertaking to relieve delinquents from the pay-
ment of penalties and directing the tax collectors of the
State to accept the payments for taxes from such delin-
quents without imposing the penalty, except the minimum
of $1.00.

No other question has been presented by counsel
except the validity of the Governor's proclamation re-
mitting the penalties and the order of the State Tax Com-
mission attempting to relieve delinquents from payments
of penalty.

The power of the executive to grant pardons for
crimes and remissions of fines, penalties and forfeitures
depends entirely upon a construction of the provision of
the Constitution conferring that power, for it is derived
solely from the Constitution, as the office does not carry
with it inherently any such power. *Baldwin* v. *Scoggin,*
15 Ark. 427. The provision of the Constitution on that
subject reads as follows:

"In all criminal and penal cases, except in those of
treason and impeachment, the governor shall have power
to grant reprieves, commutations of sentence and par-
dons after conviction; and to remit fines and forfeitures
under such rules and regulations as shall be prescribed
by law. In cases of treason he shall have power, by and
with the advice and consent of the Senate, to grant re-
prieves and pardons; and he may, in the recess of the

Senate, respite the sentence until the adjournment of the next regular session of the General Assembly. He shall communicate to the General Assembly at every regular session each case of reprieve, commutation or pardon, with his reasons therefor, stating the name and crime of the convict, the sentence, its date and the date of the commutation, pardon or reprieve." Art. VI, Sec. 18.

Similar provisions were embodied in all of the Constitutions of the State except the Constitution of 1868, which was less restrictive and conferred somewhat broader powers than in the other Constitutions. The framers of the Constitution of 1874 returned, substantially, to the form employed in the older Constitutions, and there is little difference in those forms except in punctuation.

(1) Counsel for appellant contend that the power of remitting fines and forfeitures, as well as the power to grant reprieves, commutations and pardons, is confined to criminal and penal cases, after conviction or judgment, and we think that the contention of counsel in this respect is sound. The words "in all penal and criminal cases" and also the words "after conviction" qualify the other part of the sentence, and confine the whole power of the executive to such cases. The fact that a semicolon follows the word "conviction" instead of a comma, as in the similar clause in the Constitution of 1836, can not be treated as altering the meaning of the sentence. If we failed to so interpret the whole sentence, it would confine the concluding phrase, "under such rules and regulations as shall be prescribed by law" entirely to the preceding words concerning the remission of fines and forfeitures, and exclude the power of the law-makers to prescribe rules and regulations concerning reprieves, commutations and pardons—a power which was clearly recognized by this court in the case of *Baldwin* v. *Scoggin, supra.* In fact, the latter part of the sentence as separated by the semicolon is not grammatically complete when considered apart from the remainder of the sentence. Punctuation is generally the least reliable

guide to the true meaning of a sentence and should be given controlling effect only when other tests fail. The manifest design of the framers of the Constitution was to limit the power to pardon for crime and to remit fines and forfeitures to criminal and penal cases after conviction of crime or judgment for the imposition of fine or forfeiture, and not to allow its application to penalties and forfeitures civil, remedial and coercive in their nature. This is clearly indicated in another provision of the Constitution which expressly declares that ''No power of suspending or setting aside the law or laws of the State shall ever be exercised except by the General Assembly.'' Art. II, Sec. 12.

(2) The effect of a general amnesty such as was attempted by the proclamation now under review would operate as a suspension of the law and come within the spirit, if not within the letter, of the inhibition of the Constitution just quoted, and when the two provisions of the Constitution are read together it is clear that it was intended to confine the power of the executive, with respect to the remission of fines and forfeitures, strictly to criminal and penal cases after judgment, and not to remedial and coercive penalties such as a penalty for non-assessments or non-payments of taxes. The power of the executive is, in other words, limited to the extension of clemency to individuals under sentence or judgment for crime, penalty or forfeiture, and does not reach to the granting of general amnesties, nor relief from civil penalties and forfeitures.

(3) We are clearly of the opinion, therefore, that the Governor exceeded his authority in attempting to remit the penalty imposed by statute against delinquent property owners for failure to assess for taxation, and that such delinquents can claim no relief under that proclamation.

(4) It is too plain for argument that the State Tax Commission possesses no such power as it attempted to exercise in this instance of relieving delinquent property owners from the penalty imposed by the statute. The

powers of the Tax Commission are limited entirely to the fixing of values, and do not extend to the relief of penalties imposed by statute.

The judgment of the circuit court is reversed and the cause remanded with directions to sustain the demurrer to the complaint.