TINKLE *v.* STATE.

5-1891                                         328 S. W. 2d 111

Opinion Delivered October 5, 1959.

[Rehearing denied November 9, 1959]

W. L. Ward; Chiapella, Kirkpatrick, Rhodes & Watson, Memphis, Tenn., and Taylor & Sudbury, for appellant.

Bruce Bennett, Atty. General, and Bill J. Davis, Asst. Atty. General, for appellee.

Terry Shell, amicus curiae.

SAM ROBINSON, Associate Justice. The issue here is whether the Governor has authority to remit a forfeited bail bond. Thomas Gordon Tinkle, Jr. was charged in the Criminal Division of the Chickasawba District of the Mississippi County Circuit Court with the crime of burglary and grand larceny. When the case was called for trial, Tinkle failed to appear, and the court ordered that the bail bond be forfeited. Later, the Governor issued a proclamation purporting to remit such bond forfeiture. Appellants then filed a motion in the circuit court to set aside the judgment in the sum of $5,000 rendered on the bond forfeiture, alleging that the forfeiture had been remitted by the Governor's proclamation, which was made a part of the motion. The trial court overruled the motion to set aside the judgment, and the principal, Tinkle, and the bonding company, Carolina Casualty Company, have appealed.

The State contends, first, that the Governor does not have the authority to remit a forfeited bail bond; second, that if the Governor does have such authority, procedure required by statute was not followed; and therefore the proclamation is invalid.

Article 6, § 18 of the Constitution of the State of Arkansas provides: ''In all criminal and penal cases, except in those of treason and impeachment, the Governor shall have power to grant reprieves, commutations of sentence and pardons after conviction; and to

remit fines and forfeitures under such rules and regulations as shall be prescribed by law. . . ."

Attorneys for the State argue that the procedure to force collection on the forfeited bail bond is a civil action and that, therefore, the whole proceeding arises out of a civil penalty or forfeiture, and that the Governor therefore can give no relief. *Hutton* v. *McCleskey,* 132 Ark. 391, 200 S. W. 1032, is cited as authority for that conclusion. But in that case the only issue was whether the Governor under the Constitution could remit a penalty imposed on all who failed to assess their property for taxes in the manner prescribed by statute. It was certainly not a "criminal or penal case." The *Hutton* decision at most classifies forfeitures into two categories, criminal and civil. The forfeiture in the case at bar was in a criminal case. The bond was given to insure the defendant Tinkle's appearance under a criminal indictment.

A majority of the states have a constitutional provision in which the power "to remit fines and forfeitures" is granted either to the Governor alone or in conjunction with other executives comprising a board. In none of these states have the courts ever held that the forfeiture mentioned in the constitutional provision does not apply to a forfeited bail bond. In fact, all of the courts having had occasion to pass on the question have held that the Governor alone or in conjunction with the board, as the case may be, does have authority to remit a forfeited bail bond. The case of *State* v. *Dyches,* 28 Tex. 535, is directly in point. There the Texas court held outright that under a constitutional provision similar to ours the Governor had the power to remit a forfeited bail bond. See also: *Williams* v. *Shelbourne,* 102 Ky. 579, 44 S. W. 110; *Com.* v. *French,* 130 Ky. 744, 114 S. W. 255; *Com.* v. *Hargis,* 137 Ky. 1, 120 S. W. 294.

In the case of *State* v. *Stone,* 224 Ala. 234, 139 So. 328, the defendant failed to appear at trial on a charge of violation of the prohibition law. A judgment was taken against the sureties on the bail bond and made final. The sureties in seeking relief secured the passage

of an act in the legislature appropriating the amount of the bond to be paid to them, the sureties. In holding that the act was unconstitutional in that the constitution granted to the Governor the power to remit forfeitures, the court said: "Under the Constitution of 1819, section 11, article 4, the Governor is given the power in all criminal and penal cases, except in those of treason and impeachment, to grant reprieves and pardons and remit fines and forfeitures, under such rules and regulations as shall be prescribed by law [identical with ours]. . . . *No one, we assume, would pretend to hold that the next hour after the judgment was made final against the sureties on the bond of Moberg the Governor could not have remitted the forfeiture then made final against the sureties.* This has been done from the earliest history of the state without question of the authority of the Governor. This power to remit such judgment, at all times called 'final forfeitures,' has been confided to the Governor or the executive branch of the government. . . . It is to us clear that the Governor alone has the power *to remit* fines and *forfeitures imposed and growing out of criminal prosecutions.* This has been the prevailing idea through the years, from the birth of the state to the present time." [Emphasis ours]

In *Harbin* v. *State*, 78 Iowa 268, 43 N. W. 210, the defendant Harbin failed to appear and an action on the bail bond was instituted and judgment rendered thereon. Almost a year after judgment, the Governor issued a proclamation remitting $600 of the $795 forfeiture, providing the balance, plus costs, was paid. The surety paid the balance and costs. The judgment was not satisfied of record and execution was issued. A proceeding was instituted to stay the collection of the judgment. The court said: "Had the governor authority, after the bond was prosecuted to judgment, to remit any part thereof? The power of the governor to make such remission after the entry of the breach of the conditions of the bond by the justice, and before judgment, is not questioned in this case; the point in argument being that, after judgment, there is no forfeiture within the meaning of the law, but a judgment over which the governor has no control or

right of remission. The question involves a construction of section 16, art. 4, of the constitution, the essential part of which is that the governor 'shall have the power to remit fines and forfeiture under such regulations as may be prescribed by law' [same as ours]. . . . The case deals with the question of the claim being so changed that it is no longer a forfeiture within the meaning of the law as to the authority of the governor to remit.'' After discussing the argument of whether the governor had authority to remit after judgment, and deciding in the affirmative, the court further said: ''The principle is of so much importance as to have a foundation in constitutional enactment. It hardly needs argument or citation of facts to show that reasons might exist for this beneficent act on the part of the governor, as well after judgment on a forfeiture as before. The law contemplates fact and circumstances under which the payment should not be required, even where it could legally be enforced, and we think it the spirit of the law that this large discretion with which the governor is invested extends to the time of payment of the forfeiture, whether after judgment or before.''

To the same effect is *Walker* v. *State* (Tex. Civ. App.) 103 S. W. 2d 404.

It is interesting to note that the Legislature has construed Art. 6, § 18 of the Constitution as giving the Governor authority to remit a forfeited bail bond. Ark. Stat. § 43-2818 provides: ''The Governor is hereby prohibited from considering or granting any application for pardon, or *remission of forfeiture of bail-bond* until there is filed in his office a certificate of the county clerk, or the affidavit of two [2] persons known to be credible, that the application for such pardon or remission of forfeiture has been published as hereinafter provided.'' [Emphasis ours]

The State also maintains that the proclamation is invalid because of the provisions of § 1 of Act 154 of 1903 (Ark. Stat. § 43-2818) quoted above.

It will be noticed the Act requires proof of publication that the application for such pardon or remission

of forfeiture "has been published as hereinafter provided," but the Act then fails to specify any method by which publication of the application for remittitur of the bail bond is to be made. This incompleteness might not be fatal to the publication requirement if the courts could reasonably say that any kind of publication would suffice. But § 2 of the Act (Ark. Stat. § 43-2819) provides:

"In applications for pardon in all cases of convictions for felony, and the offenses of wife-beating, unlawful carrying of weapons and the unlawful sale of liquors, the application setting forth the grounds upon which the pardon is asked, together with a list of the signers or petitioners uniting in the request for pardon, shall be published for two [2] insertions in a weekly newspaper, if one [1] be published therein, in the county where the conviction was had, or if the conviction was had in a county other than that in which the offense took place, then in the county where the offense was committed, in addition to the county where the conviction was had."

And § 3 (Ark. Stat. § 43-2820) provides:

"In all cases of conviction for offenses other than those above mentioned, the publication of the intended application shall be made by posting the application, containing a statement of the grounds upon which the pardon is asked, as well as a list of the signers to any petition asking that the same be granted, in front of the usual entrance door of the courthouse of the county or counties, as above provided, for the period of ten [10] days prior to the presentation of such application to the Governor."

Thus, it is clear that there must be publication of one kind of notice of the application for a pardon for wife beating, *etc.*, and another kind of publication for certain other offenses. Neither method of publication of the intent to apply for a pardon applies to applications for a remittitur on a forfeited bail bond. In these circumstances it is obvious that the Act requiring publication of the application for a remittitur is incomplete and cannot be enforced.

At the beginning of Act 154 of 1903 there is a synopsis of each section of the Act, and a publication of the application for the remission of a forfeited bail bond is not mentioned. It would be conjecture pure and simple for this Court to say that by Act 154 the General Assembly intended that publication of an application for remittitur of a forfeited bail bond should be made in the same manner as the publication required in applications for a pardon in the case of wife beating, felonies, *etc.*, or by the same kind of publication required for other offenses. This Court said in *Jones* v. *Lawson*, 143 Ark. 83, 220 S. W. 311: "The Court cannot adopt a conjectural interpretation of a statute to solve the doubt. If no judicial certainty can be settled on as to the meaning of the statute from its language, the court is not at liberty to supply one. There must be a competent and definite expression of the legislative will to accomplish that result."

The fact that the statute dealing with applications for the remittitur of a forfeited bail bond is incomplete does not affect the authority of the Governor to remit such forfeiture. *Horton* v. *Gillespie*, 170 Ark. 107, 279 S. W. 1020, was a case involving the authority of the Governor to issue a pardon. There the Court said: "Legislation which denied the right to pardon except in cases of treason and impeachment, or which so hampered the right as to make the right substantially unavailing, would be void as an abridgment of the power conferred." The same thing is true with reference to the authority of the Governor to remit a bail bond forfeiture. Under the Constitution the General Assembly has the power to prescribe rules and regulations concerning the granting of remittiturs of forfeited bail bonds. But the fact that the Legislature has not prescribed a method for publishing the application for the remission of a bond forfeiture does not affect the authority of the Governor to make such remission.

Reversed, with directions to set aside the judgment rendered on the bond forfeiture.

Ed. F. McFADDIN, Associate Justice (Dissenting).

The question presented on this appeal is the power of the Governor to grant to appellants relief from a bail bond forfeiture. Dates and events herein are:

(1) On October 29, 1956 appellant, Tinkle, was arrested in Mississippi County, Arkansas because of an information and warrant charging him with burglary and grand larceny alleged to have been committed in Mississippi County on September 13, 1956.

(2) On November 26, 1956 Tinkle made bond for $5,000.00 with appellant, Carolina Casualty Insurance Company (hereinafter called "Carolina"), as surety. The bond was conditioned for Tinkle's appearance in the said criminal case in the Mississippi County Circuit Court.

(3) Early in 1957 Tinkle was arrested on a warrant from the United States District Court and charged with a federal offense (robbery of F.I.D.C. bank), and committed in Diagonal, Iowa on March 24, 1957. Tinkle was convicted of said crime in the United States District Court in Iowa on August 22, 1957 and sentenced to ten years in a United States prison. At all times since the last mentioned date Tinkle has been held by the United States.

(4) On October 28, 1957 when Tinkle failed to appear for trial in the Mississippi County Circuit Court a forfeiture was taken on the said bail bond; and an order made as follows:

". . . the Clerk of this Court is hereby directed to issue summons to the Bondsmen directing them to show cause, if any they have, why judgment should not be entered against them according to the terms of said Bond, and to issue an alias warrant for the defendant, Thomas Gordon Tinkle, Jr."

(5) Summons was duly issued and served on Carolina in accordance with the foregoing order. On October

**974**

22, 1958 the Governor of Arkansas issued a Proclamation[1] purporting to relieve Tinkle and Carolina from the bail bond forfeiture.

(6) On November 7, 1958 the Mississippi County Circuit Court, after hearing evidence of all the foregoing, rendered judgment which refused to recognize the enforceability of the Governor's Proclamation. The judgment said in part:

". . . that the State of Arkansas, for the use and benefit of Mississippi County, Arkansas, do have and recover of and from respondents and defendants, Thomas Gordon Tinkle, Jr., and said Carolina Casualty Insurance Company, from each and both of them, the sum of $5,-000.00, interest thereon as provided by law, until fully paid, and all costs herein expended, for which execution shall issue."

---

[1] The said Proclamation recited in part: "WHEREAS, the Circuit Court of Chickasawba District, Mississippi County, Arkansas, Criminal Division, did on October 28, 1957 enter an order of forfeiture on bond dated November 26, 1956, and bearing the number 58978, said bond having been executed and given for the appearance of Thomas G. Tinkle, Jr., in Case No. 8081 in the said Circuit Court, to-wit: 'State of Arkansas vs. Thomas Gordon Tinkle, Jr.'; and

"WHEREAS, the Carolina Casualty Insurance Company, with home office in Burlington, North Carolina, is the surety on said bond, with Thomas Gordon Tinkle, Jr. being the principal, and . . . .

"WHEREAS, it is deemed it would be unjust and unfair not to remit, extinguish, cancel, and release the forfeiture of said bond as is above referred to, and that as above referred to, it would also be unjust and unfair not to also remit, extinguish, cancel, and release all obligation thereunder to pay said bond; . . . .

"NOW, THEREFORE, I, Orval E. Faubus, Governor of the State of Arkansas, by virtue of the power and authority vested in me under Article 6 § 18 of the Arkansas Constitution of 1874, do hereby remit, extinguish, cancel, and release the forfeiture of said bond under the court order of said Circuit Court to such effect of October 28, 1957, or of any other date, to now and hereafter, by or of said Circuit Court, said bond having been filed in said court on November 26, 1956, bearing and showing Power No. 58978, having been executed and given for the appearance of said Thomas G. Tinkle, Jr., in said court as defendant in the certain cause therein styled 'State of Arkansas vs. Thomas Gordon Tinkle, Jr.', being Case No. 8081 in said court, the said Thomas G. Tinkle, Jr., and Thomas Gordon Tinkle, Jr., being one and the same person, the principal in and of said bond and the defendant in said Case No. 8081 in said court; and all obligation to pay said bond is also hereby remitted, extinguished, cancelled, and released . . . . "

(7) On November 14, 1958 the Governor of Arkansas issued his further Proclamation[2] in this matter which was a further effort to relieve Tinkle and Carolina from the bail bond forfeiture. On December 1, 1958 Tinkle and Carolina presented to the Mississippi County Circuit Court the Governor's Proclamation of November 14, 1958 and asked that the judgment of November 7, 1958 be vacated and set aside. The prayed relief was refused; and the Circuit Court issued an order reading in part:

".... the Court considers, orders, and adjudges, that the said motion of the said respondents, defendant and movants, praying that said judgment of this Court of November 7th, 1958, be vacated and set aside, be, and the same is hereby overruled and finally dismissed at the cost of said respondents, defendants and movants."

(8) From the order of December 1, 1958, as well as from the judgment of November 7, 1958, Tinkle and Carolina prosecute the present appeal.

-----

So much for the facts. As heretofore stated, the question is the power of the Governor to grant appellants relief from the bail bond forfeiture in this case. The germane portion of Art. 6 § 18 of the Arkansas Constitution reads as follows:

"In all criminal and penal cases, except in those of treason and impeachment, the Governor shall have power to grant reprieves, commutations of sentence and pardons after conviction, and to remit fines and forfeitures under such rules and regulations as shall be prescribed by law."

In *Hutton* v. *McCleskey*, 132 Ark. 391, 200 S. W. 1032, the Governor had issued a proclamation relieving citizens

---

[2] This Proclamation said in part: "NOW, THEREFORE, I, Orval E. Faubus, Governor of the State of Arkansas, by virtue of the power and authority vested in me under Article 6, Section 18 of the Arkansas Constitution of 1874, do hereby remit, extinguish, cancel and release the forfeiture of said bond and said judgment thereon which has been rendered by said Circuit Court on said date of November 7, 1958, or any such forfeiture and any other such judgment thereon with reference to said bond, and all obligation to pay said bond and judgment is also hereby remitted, extinguished, cancelled, and released."

from the penalties in certain tax assessing matters. This Court carefully considered Art. 6 § 18 of the Constitution and held that the words, "in all criminal and penal cases", qualified the entire sentence of Art. 6 § 18 of the Constitution, and related as much to forfeitures as it did to reprieves, commutations, and pardons. Chief Justice McCulloch used this language in the Court's opinion:

"The manifest design of the framers of the Constitution was to limit the power to pardon for crime and to remit fines and forfeitures to criminal and penal cases after conviction of crime or judgment for the imposition of fine or forfeiture, and not to allow its application to penalties and forfeitures civil, remedial and coercive in their nature. This is clearly indicated in another provision of the Constitution which expressly declares that 'No power of suspending or setting aside the law or laws of the State shall ever be exercised except by the General Assembly'. Art. II, Sec. 12.

"The effect of a general amnesty such as was attempted by the proclamation now under review would operate as a suspension of the law and come within the spirit, if not within the letter, of the inhibition of the Constitution just quoted, and when the two provisions of the Constitution are read together it is clear that it was intended to confine the power of the executive, with respect to the remission of fines and forfeitures, strictly to criminal and penal cases after judgment, and not to remedial and coercive penalties such as a penalty for non-assessments or non-payment of taxes. *The power of the executive is, in other words, limited to the extension of clemency to individuals under sentence or judgment for crime, penalty or forfeiture, and does not reach to the granting of general amnesties, nor relief from civil penalties and forfeitures.*" (Emphasis supplied.)

Therefore, in the light of the holding in *Hutton* v. *McCleskey, supra,* it must be determined whether a proceeding - like the present one - to collect on a bail bond forfeiture is a civil case or a "criminal and penal case". With striking unanimity the adjudicated cases hold that an action to collect on a bail bond forfeiture is a civil action.

In 10 Ann. Cas., page 293, there is an annotation entitled: "Action on Criminal Bail Bond as Civil or Criminal Proceeding"; and the following appears:

"It may be stated as a well-settled rule that an action by the state or government on a criminal bail bond is civil and not criminal in its nature. Such an action is based upon a contract between the surety and the state whereby, on condition broken, the surety becomes liable to pay a sum certain to the state. It is in no sense a continuation of the criminal proceedings in which the bail bond was given, and is enforceable by a civil action. *State* v. *Robb,* 16 Ind. 413; *State* v. *Ozer,* 5 La. Ann. 744; *State* v. *Norment,* 12 La. 511; *State* v. *Ansley,* 13 La. Ann. 298; *U. S.* v. *Ensign,* 2 Mont. 396; *Moore* v. *State,* (Tex. Crim. 1907), 106 S. W. Rep. 358. And it is equally well settled that the state may bring an action of debt on the recognizance to recover from the surety the amount thereof. *Pate* v. *People,* 15 Ill. 221; *People* v. *Witt,* 19 Ill. 169; *State* v. *Inman,* 7 Blackf. (Ind.) 225; *State* v. *Gorley,* 2 Iowa 52; *State* v. *Glass,* 9 Iowa 325; *State* v. *Folsom,* 26 Me. 209; *Com.* v. *Green,* 12 Mass. 1; *People* v. *Van Eps,* 4 Wend. (N. Y.) 387; *State* v. *Daily,* 14 Ohio 92; *State* v. *Gassaway,* 11 Humph. (Tenn.) 203. See also *Wingate* v. *Com.,* 5 Cush. (Mass.) 446; *Com.* v. *Gordon,* 15 Pick. (Mass.) 193; *People* v. *Blackman,* 1 Den. (N. Y.) 632; *People* v. *Young,* 7 Hill (N. Y.) 44; *State Treasurer* v. *Cook,* 6 Vt. 282."

The holdings are also summarized in 6 Am. Jur. (Revised Volume) page 152, "Bail and Recognizance" § 210; and in 8 C.J.S. page 191, "Bail" § 95. An enlightening case is that of *Dale* v. *Commonwealth,* 101 Ky. 612, 42 S. W. 93, 38 L.R.A. 808, which clearly illustrates the difference between a pardon and an attempt to relieve against a bail bond forfeiture. In that case there had been a bail bond forfeiture; and later the defendant was apprehended, tried, and convicted. The Governor issued a pardon, and the Kentucky Constitution provided as to the power of the Governor (§ 77): "He shall have power to remit fines and forfeitures, commute sentences, grant reprieves, and pardons, except in cases of impeachment . . . " The Court of Appeals of Kentucky held that the pardon relieved the

convicted person of the sentence but had no effect whatever on the bail bond forfeiture; and the Court quoted with approval this language from the Supreme Court of Kansas: "Nor can we see how a pardon could reach a matter wholly independent of the criminal offense charged or of the punishment therefor. Even if the defendant had been acquitted on the criminal charge, still this action on the forfeited recognizance might be maintained."

Some examples of forfeitures in criminal cases as found in Arkansas statutes are: destruction of an illicit still (§ 48-938); confiscation of fish or game unlawfully caught (§ 47-523); and confiscation of deadly weapons in certain instances (§ 43-2327). These are some of the "forfeitures" referred to in the Constitution, and which may be remitted by the Governor; but an effort to collect on a forfeited bail bond, even in a criminal case, is a civil action. In the case at bar the appellants gave notice of appeal as provided by Act No. 555 of 1953, which relates only to civil cases; later, on January 19, 1959, appellants applied to the Trial Court and obtained an extension of the 90 days for filing of the record in this Court, and such extension is a procedure under said Act No. 555 which applies only to civil cases; and when appellants filed the present appeal in this Court, it was - without objection - filed on the civil docket.

Regardless of what other states may have decided, I insist that our own Court in *Hutton* v. *McCleskey, supra,* held:

"The power of the executive is, in other words, limited to the extension of clemency to individuals under sentence or judgment for crime, penalty or forfeiture, and does not reach to the granting of general amnesties, nor relief from civil penalties and forfeitures."

I conclude that the action and judgment on the forfeited bail bond was a *civil proceeding,* and that the Governor's power relates only to "criminal and penal cases", and does not extend to a civil case like this one.

Therefore, I respectfully dissent from the majority holding in the case at bar.