HOOD *v.* STATE.

5-1937 332 S. W. 2d 488

Opinion delivered February 29, 1960.

*Norton & Norton,* for appellant.

*Bruce Bennett,* Atty. General, By: *Bill J. Davis,* Asst. Atty. General, for appellee.

SAM ROBINSON, Associate Justice. One John Puckett was charged in the St. Francis Circuit Court with the crimes of forgery and uttering. On January 27, 1958, appellant herein made Puckett's bond. On February 11th the felony information was amended charging additional offenses to bring the case within the Habitual Criminal Act. The case was set to be tried on February 24th.

On February 19th Hood wrote to T. E. Christopher, Circuit Clerk at Forrest City, as follows: ''As per our conversation of thirty minutes ago, I am enclosing a letter from the State Hospital stating that Johnny Puckett is a patient at this time. Enclosed is a stamped, addressed envelope which I would appreciate very much if you would use and advise me the date to which his trial is passed.'' Enclosed with Hood's letter was a letter from the State Hospital stating that Puckett was admitted on February 18th under a voluntary committment under the provisions of Act 411 and was at that time a patient in the hospital.

On February 20th Fletcher Long, Deputy Prosecuting Attorney, wrote to Hood:

"Your letter and enclosure, mailed to Mr. T. E. Christopher, Clerk, has been referred to me.

"You are informed that from the State's point of view, there is nothing for the Court to consider at the present time but the question of forfeiting your bond on Monday, February 24th.

"If a motion for continuance is framed and presented because of the contents of the letter from the State Hospital, the State will perhaps concede the point. I suggest that you consult your attorney or Puckett's Little Rock attorney in this matter, inasmuch as we are informed that Mr. West, local counsel for Puckett, has relieved himself of further responsibility in the matter.

"In the event that the motion is properly presented, and is granted, you are hereby informed that we will make application for a much larger bond, on the basis of Puckett's past record, and the more severe punishment which could result from our amendment to bring this case under the habitual criminal statute."

Evidently no formal application was made to the court for a continuance, and on February 28th the court entered an order forfeiting the bond. Later Hood stated that he thought the case had been passed and it was not until April that he learned that the bond had been forfeited.

On April 18, 1958, Hood filed a petition to set aside the bond forfeiture, which was overruled by the court on the same date.

On April 21, 1958, summons was issued for Hood directing him to appear on April 28th and show cause why judgment should not be rendered on the bond forfeiture.

On August 16th and prior thereto, motions to quash and demurrers previously filed by Hood were overruled.

On August 16th Hood filed an answer to the summons to show cause why judgment should not be rendered. Among other things the answer alleges:

That on February 24th when the case was to be tried, Puckett was insane and confined in the Arkansas State Hospital and was unable to come to court.

That Puckett is insane and is still confined to the State Hospital and has been committed to the hospital by the Pulaski Circuit Court.

That an alias warrant was issued by the St. Francis County Circuit Court on February 24th at the time Puckett failed to appear for trial; that this warrant is in the hands of the Sheriff of Pulaski County and will be executed promptly in the event Puckett is released from the State Hospital and he will be brought to St. Francis County for trial.

Appellant asked for a jury trial, but his motion was overruled, and on February 6, 1959, without hearing any evidence, there was entered a summary judgment against Hood. In his objections to the rendition of the judgment, Hood's attorneys clearly stated that on the date set for trial, February 24, 1958, Puckett was confined in the State Hospital for Nervous Diseases and since that time he has been adjudged insane and duly committed by the Pulaski Circuit Court; that a warrant has been issued by the St. Francis Circuit Court and that such warrant is in the hands of the Sheriff of Pulaski County and will be executed if Puckett is released from the State Hospital and that Puckett will be returned to St. Francis County.

The great weight of authority is to the effect that the bondsman will be exonerated from liability on the bail bond where the principal is confined because of insanity. "The general rule in criminal cases is that the sureties may be exonerated from liability for failure to produce the principal at the trial, or a forfeiture may be set aside, where such failure is due to the fact that the principal is in confinement because of his insanity." 6 Am. Jur. Rev. p. 135.

"Ordinarily, insanity of the principal is a good defense for nonperformance of the obligation of the bond." 2 R. C. L. p. 55, par. 67.

There is an annotation on the subject in 7 A. L. R. p. 394. There the annotator says: "In criminal cases, it seems to be well established that bail will be exonerated from liability for failure to produce the principal at the trial when such failure is due to the fact that the principal is in confinement because of his insanity" (citing cases).

In *Briggs* v. *Com.* (1919), 185 Ky. 340, 214 S. W. 975, the court said: "In this state, where the principal is actually confined in an insane asylum, being thus in the custody of the state, and beyond the power of the sureties to produce him, the latter is discharged."

In our cases of *Adler* v. *State,* 35 Ark. 517, the defendant had been taken out of the state and confined in a mental institution in New York. It was held that the bondsmen were liable, but that case is clearly distinguishable from the case at bar. In the *Adler* case there was no offer to ever produce Kahn at any term of court, and furthermore, it appeared that the bondsmen deliberately sent the principal to New York out of the jurisdiction of the courts of this state, and this Court said: "The inference from the plea is, that they [the bondsmen] assumed the responsibility of sending him there, without consulting the court, or permitted others to do so. If, by the law and regulations of the asylum, he was detained there, as alleged, and out of the process of the court, it was not the fault of the state, but the result of their sending him there, or permitting him to be sent. . . . It would be unsafe to the public to permit the bail of a person charged with murder to take it upon themselves to send him out of the state, or permit him to be sent, to be treated for insanity, or any other disease, and then plead his absence in discharge of the bail-bond."

In referring to the *Adler* case the annotator in 7 A. L. R. p. 395 says: "It was held no defense to the sureties on the bond that the accused was confined in an insane asylum in another state, and so was unable to attend his trial, *where it appeared that the sureties themselves had assumed the responsibility of sending the*

*accused there, without consulting the court or permitting others to do so."*

In the case at bar it does not appear that Hood had anything whatever to do with Puckett's being admitted to the State Hospital. There is no indication that Hood sent him to the State Hospital or approved of his being admitted to the State Hospital, and, furthermore, at no time has Puckett been beyond the process of the St. Francis Circuit Court. An alias warrant was isued by the court on February 24, 1958, and yet up until the time the judgment was rendered on the bond the warrant had not been served, although Puckett was still confined in the State Hospital. The trial was set for February 24th and Puckett did not appear; that is when the alias warrant was issued. Both the Clerk of the Court and the Prosecuting Attorney knew that Puckett was in the State Hospital. A warrant of arrest could have been executed and Puckett actually produced in court before the bond was ever ordered forfeited on February 28th; but this was not done.

The character of the plea of the bondsman in this case raises a question of fact that should be decided by a jury. In *Washington* v. *State of Mississippi,* 98 Miss. 150, 53 So. 416, the defense to the bond forfeiture was that the principal was dead. It was held that this was a question of fact that should be submitted to a jury. To the same effect is *Short, et al* v. *State,* 16 Tex. 44. See also *Bank of Eau Claire* v. *Reed,* 232 Ill. 238, 122 Am. St. Rep. 66, 108, and *Hollister* v. *U. S.,* 145 F. 773. In *State* v. *Sanders,* 153 N. C. 624, 69 S. W. 272, the court said: "When the forfeiture of a recognizance is moved for, if all the matters are of record, the judge decides without the intervention of a jury. But when the answer raises an issue of fact, the defendant is entitled to have the matter passed upon by a jury" (citing cases). Whether the nature of Puckett's confinement in the State Hospital was such as to relieve the bondsman from the bond forfeiture is a jury question.

Reversed and remanded.

CARLETON HARRIS, C. J., and ED. F. McFADDIN and GEORGE ROSE SMITH, JJ., dissent.

CARLETON HARRIS, Chief Justice, dissenting. In my view, the judgment against Hood was properly rendered because the "offer of proof" submitted by appellant prior to the rendition of judgment, contained nothing that constituted a defense. Appellant offered to prove that "on or about February 18, 1958, Johnny Puckett was admitted to the State Hospital under the provisions of Section 13, Act 411, of 1955 (Ark. Stats. 83-713, supplement), and on the appearance day, February 24, 1958, he was still being held under the statute referred to at the State Hospital, and no written notice had been given by him or his counsel of his desire to leave." This section, *inter alia,* provides:

"Under such rules as it may prescribe the Commission or its authorized representative may receive as a patient for treatment, any alcoholic resident of this State against whom no criminal charges are pending, and who shall voluntarily apply for treatment, and may retain for not more than ninety (90) days and treat and restrain such person in the same manner as if committed by order of court, provided, however, that such person must be released within ten (10) days after receipt in writing of notice from such person (or counsel for such person) of his intention or desire to leave."

Puckett was admitted under this section, *not as an insane person,* and, of course, was not properly admitted because criminal charges were pending against him at the time (though this was unknown to the hospital authorities).

In the next paragraph (b), of his offer of proof, appellant states:

"On February 19, 1958, defendant Hood informed the Clerk of St. Francis County, that Puckett was in the State Hospital, and that for that reason Defendant Hood would not be able to produce him in Court on the appearance day, February 24, 1958; and Defendant Hood was then told by the Clerk that the case would be continued if Defendant Hood would furnish the Clerk with a letter from the State Hospital authorities stating that Puckett was a

patient at the State Hospital. Such a letter was furnished to the Clerk by Defendant Hood on February 20th, 1958, and Defendant Hood had no reason to suppose, until some time in April, 1958, that the case had not been continued in accordance with the Clerk's assurances to him.''

The letter referred to simply certified that ''Johnny D. Puckett was admitted to the State Hospital on February 18, 1958, on a voluntary commitment under the provisions of Act 411, and at the present time is still a patient in this hospital.'' It is therefore apparent that Hood, one day after Puckett voluntarily went to the hospital, knew the whereabouts of the latter. He is presumed to have also known that this admission was contrary to the statute, and the hospital, in all probability, would have released Puckett immediately upon receiving notice. There was no offer to prove that Hood made such an effort. Relative to appellant's statement, ''Defendant Hood had no reason to suppose until sometime in April, 1958, that the case had not been continued in accordance with the Clerk's assurances'', the record reflects otherwise, for on February 20th, the day following Hood's notice to the clerk, Fletcher Long, deputy prosecuting attorney for St. Francis County, advised Hood as follows:

''Your letter and enclosure, mailed to Mr. T. E. Christopher, Clerk, has been referred to me.

You are informed that from the State's point of view, there is nothing for the court to consider at the present time but the question of forfeiting your bond on Monday, February 24th. *If a motion for continuance is framed and presented*[1] because of the contents of the letter from the State Hospital, the State will perhaps concede the point. I suggest that you consult your attorney or Puckett's Little Rock attorney in this matter, inasmuch as we are informed that Mr. West, local counsel for Puckett has relieved himself of further responsibility in the matter.''

Hood therefore had notice that the State would not accept the letter to the Clerk, and was further notified that Puckett's attorney was probably no longer connected with

---

[1] My emphasis.

the case. Despite this knowledge, no further effort was made to have Puckett present in Court, and the forfeiture on the bond was taken — and in my opinion, rightly so. The purpose of a bond is to insure that a defendant will be present when his case is set, and Hood, by merely writing to the Clerk, did not excuse himself from any further obligation to have Puckett present.

Let it be pointed out that *there is nothing in the record to indicate that Puckett was insane on February 24, 1958.* To the contrary, the doctor's report shows that he was voluntarily admitted for alcoholism. Further, *there is not even an allegation* in appellant's offer of proof that Puckett was insane on February 24th.

I do not reach the question of whether appellant is entitled to a jury trial, for under the above statement of facts, I am firmly of the opinion that the trial court's judgment should be affirmed.

Mr. Justices McFADDIN and GEORGE ROSE SMITH join in this dissent.