Hood *v.* State.

5-3054                                    372 S. W. 2d 588

Opinion delivered December 2, 1963.

*Holt, Park & Holt,* for appellant.

*Bruce Bennett,* Attorney General, by *Richard B. Adkisson,* Asst. Atty. General, for appellee.

Jerry Witt, Special Associate Justice. This is an appeal from that part of the judgment and order of the St. Francis County Circuit Court entered on the 8th day of February 1963, in the above entitled cause of action, which order declared of no force and effect, the Proclamation of the Governor of Arkansas, remitting, cancelling, and releasing a bond forfeiture, and for which forfeiture judgment was entered against Ted Hood in the St. Francis Circuit Court on the 24th day of February, 1958, in favor of the State of Arkansas in the sum of Two Thousand ($2,000.00) dollars and costs, and which judgment of forfeiture was affirmed by this Court on March 26, 1962.

The facts in this case are: Johnny Puckett was charged in the St. Francis Circuit Court with the crime of Forgery and Uttering. Appellant Ted Hood, d/b/a Ted Hood Bonding Company, made Puckett's appearance bond. The case was set for trial on February 24, 1958, but Puckett failed to appear. On February 28, 1958, the Court entered an order forfeiting the bond; appellant filed a motion to set aside the bond forfeiture, which was overruled; and summons was then issued for Hood to appear and show cause why judgment should not be rendered on the bond forfeiture. Appellant filed answer and asked for a jury trial, which was overruled; and judgment was rendered against him in the sum of Two Thousand ($2,000.00) dollars. There was an appeal to this Court; and on February 29, 1960, this Court reversed the Lower Court, and remanded the case for jury trial. (*Hood* v. *State,* 231 Ark. 772, 332 S. W. 2d 488.)

On remand, the case was tried to a jury on February 22, 1961, and a verdict was rendered against the appellant in favor of the State of Arkansas in the sum of Two Thousand ($2,000.00) dollars on the bond forfeiture. There was an appeal to this Court; and on March 26, 1962, this Court affirmed the judgment of the Lower Court. (*Hood* v. *State,* 234 Ark. 901, 356 S. W. 2d 28.) On August 4, 1962, the Governor issued a Proclamation remitting, extinguishing, cancelling, and releasing the forfeiture of the bond; and Hood pleaded that Proclamation as a release of the judgment against him. On February 8, 1963, the Circuit Court found that said Court had retained jurisdiction against appellant and the execution issued on the bond forfeiture and held that the Governor's Proclamation of August 4, 1962, had no force and effect and did not relieve appellant from the judgment against him on the bond forfeiture rendered by the Circuit Court on the jury verdict of February 22, 1961; and from that judgment of February 8, 1963, there is the present appeal.

The Lower Court, in reaching its conclusion with reference to the Governor's Proclamation, said this:

"After the jury returned that verdict, this Court entered the proper civil judgment, based upon that judgment . . . It is the opinion of this Court, with reference to the Proclamation of the Governor which was issued August 4, 1962, that it is ineffectual because, although the Constitution provides that the Governor has the right to set aside forfeitures, it is the opinion of this court that this is not a forfeiture . . . the forfeiture was had even before the hearing before the jury and even after the matter was submitted to the jury and they rendered a verdict thereon . . . and the Court refuses to set aside the judgment against the Ted Hood Bonding Company." The appellant, in his brief, assigns two points:

"(1) The lower court erred in holding that the Governor's Proclamation of August 4, 1962, remitting and cancelling the bond forfeiture in this cause, was of no force and effect.

"(2) Assessment of costs."

At the outset we copy certain pertinent provisions of the Governor's Proclamation here involved:

"Whereas, the Circuit Court of St. Francis County did, on February 28, 1958, order forfeited the bond made by Ted Hood . . . for the appearance of Johnny Puckett in a criminal action against him in the Circuit Court of St. Francis County; and . . .

"Whereas, execution has been issued for collection of said bond; and

"Whereas, extenuating circumstance in behalf of Ted Hood are: [mentioning four]; and . . .

"Whereas, it would be just and fair to remit, extinguish, cancel, and release the forfeiture of said bond hereinabove referred to:

"Now, Therefore, I, Orval E. Faubus, Governor of the State of Arkansas, by virtue of the power and authority vested in me under Article 6, Par. 18, of the Arkansas Constitution of 1874, do hereby remit, extinguish, cancel, and release the forfeiture of the aforesaid bond . . ."

Article 6, Section 18, Constitution of 1874, provides:

"In all criminal and penal cases, except those of treason and impeachment, the Governor shall have power to grant reprieves, commutation of sentences and pardons after convictions, and to remit fines and forfeitures under such rules and regulations as shall be prescribed by law."

Attorneys for the State do not raise the question of the right of the Governor to act, because of the failure to comply with Ark. Stat. Ann. § 43-2818 (1947), where it is provided that the Governor is prohibited from considering or granting any application for pardon or "remission of forfeiture of bail bond" until there is filed in his office a certificate of the County Clerk or the affidavit of two persons known to be credible, that the application for such pardon or remission of forfeiture has been published as hereinafter provided.

The attorneys for the State insist that the judgment on the forfeited bail bond is a *civil proceeding* and not a *criminal matter*. The Lower Court held that this was not a forfeiture; that the forfeiture was had before the jury trial and its verdict; in other words, a trial by the jury on the bond changed the nature of the proceeding and, being a civil judgment, could not be affected by the Governor's Proclamation. Attorneys for the State cite the case of *Tinkle* v. *State*, 230 Ark. 966, 328 S. W. 2d 111, and say that in the cited case the Court held:

". . . that the Governor had authority under the Constitutional provision to remit forfeited bail bonds prior to judgment in the collection thereof. Although there was some dicta to the effect that the same would be true of remittitur after judgment, the court did not so hold."

We agree that our Constitution limits the right of the Governor to grant reprieves and commutations in all criminal and penal cases except those of treason and impeachment, and that it does not extend to civil cases. We are now called upon in this case to decide the nature of the proceeding in the Lower Court; whether the judg-

ment on the forfeited bond, after trial by jury, is a civil or criminal proceeding. We hold that it was a criminal proceeding and the Governor's Proclamation had the effect of relieving the appellant from payment of said judgment. The case of *Tinkle* v. *State (supra)* was very similar, if not on all fours, with the case at bar, and we quote from it at length:

"The issue here is whether the Governor has authority to remit a forfeited bail bond. Thomas Gordan Tinkle, Jr. was charged in the criminal division of the Chickasawba District of the Mississippi County Circuit Court with the crime of burglary and grand larceny. When the case was called for trial, Tinkle failed to appear, and the court ordered that the bail bond be forfeited. Later, the Governor issued a proclamation purporting to remit such bond forfeiture. Appellants filed motion in circuit court to set aside the judgment in the sum of $5,000.00 rendered on the bond forfeiture, alleging that the forfeiture had been remitted by the Governor's Proclamation which was made a part of the motion. The trial court overruled the motion to set aside the judgment, and the principal, Tinkle, and bonding company, Carolina Casualty Company, have appealed.

"The State contends, first, that the Governor does not have the authority to remit a forfeited bail bond; second, that if the Governor does have such authority, procedure required by the statute was not followed and, therefore, the proclamation is invalid . . .

"Attorneys for the State argue that the procedure to force collection on the forfeited bail bond is a civil action and that, therefore, the whole proceeding arises out of a civil penalty or forfeiture, and that the Governor, therefore, can give no relief. *Hutton* v. *McCleskey,* 132 Ark. 391, 200 S. W. 1032, is cited as authority for that conclusion. But in that case the only issue was whether the Governor under the constitution could remit a penalty imposed on all who failed to assess their property for taxes in the manner prescribed by statute. It was certainly not a 'criminal or penal case' . . . The forfeiture in the case at bar was in a criminal case.

The bond was given to insure the defendant Tinkle's appearance under a criminal indictment. A majority of the states have a constitutional provision in which the power (to remit fines and forfeitures) is granted either to the Governor alone or in conjunction with other executives comprising a board. In none of these states have the courts ever held that the forfeiture mentioned in the Constitutional provision does not apply to a forfeited bail bond . . .

"The case of *State* v. *Dyches*, 28 Tex. 535, is directly in point. There the Texas Court held outright that under a constitutional provision similar to ours the Governor had the power to remit a forfeited bail bond. See also: *Williams* v. *Shelbourne*, 102 Ky. 579, 44 S. W. 110; . . .

"In *Harbin* v. *State*, 78 Iowa 268, 43 N. W. 210, the defendant Harbin failed to appear and an action on the bail bond was instituted and judgment rendered thereon. Almost a year after judgment, the Governor issued a proclamation remitting $600.00 of the $795.00 forfeiture, providing the balance plus costs, was paid . . . The judgment was not satisfied of record and execution was issued. A proceeding was instituted to stay the collection of the judgment. The court said: 'Had the Governor authority, after the bond was prosecuted to judgment, to remit any part thereof? The power of the Governor to make such remission after the entry of the breach of the conditions of the bond by the justice, and before judgment, is not questioned in this case; the point in argument being that, after judgment there is no forfeiture within the meaning of the law, but a judgment over which the Governor has no control or right of remission. The question involves a construction of Section 16, Article 4, of the Constitution, the essential part of which is that the Governor "shall have the power to remit fines and forfeiture under such regulations as may be prescribed by law" [same as ours] . . . The case deals with the question of the claim being so changed that it is no longer a forfeiture within the meaning of the law as to the authority of the Governor to remit.'

After discussing the argument of whether the Governor had authority to remit after judgment, and deciding in the affirmative, the court further said: 'The principle is of so much importance as to have a foundation in Constitutional enactment. It hardly needs argument or citation of facts to show that reasons might exist for this beneficent act on the part of the Governor, as well after judgment on a forfeiture as before . . . and we think it the spirit of the law that this large discretion with which the Governor is invested extends to the time of payment of the forfeiture, whether after judgment or before.' "

The case of *Harbin* v. *State,* 78 Iowa 268, was cited by this court in *Tinkle* v. *State* as authority for holding that the Governor had authority to remit the forfeiture *whether after judgment or before.* In said case, the point in argument was, that after judgment there is *no* forfeiture, but a judgment, "civil" (italics ours) over which the Governor has no control or right of remission. In 77 A.L.R. 2d, p. 989, there is this language:

"The judicial procedure for effecting the forfeiture of a bail bond, as reflected in a number of the cases herein, frequently includes two distinct steps. Under this method an order of forfeiture is entered soon after the time at which the principal was in default for appearance. This is generally regarded as in the nature of an interlocutory decree, and an absolute judgment is then entered only after notice to the surety and an opportunity to show cause why final judgment should not be entered. Consideration is frequently given in the cases to whether, when the Governor purports to exercise the power of remission, the prior entry of a final judgment should determine the existence, or at least the scope, of such a power . . . the courts have generally held that a constitutional or statutory grant of power to the Governor to remit 'fines and forfeitures' includes that of remission of a final judgment of forfeiture entered upon a bail bond."

In the case at bar, the origin was in a criminal proceeding: Pucket was charged with a crime (Forgery and Uttering), he made bond; when the case was called for

trial he failed to appear and a forfeiture was taken on his bond; and later a trial by jury was had on the bond forfeiture and verdict rendered against Ted Hood, the bondsman. The trial by a jury on the bond did not change the character of the proceeding from a criminal to a civil case: it had its origin in a criminal proceeding, and it made no difference whether the judgment was rendered after a trial by a jury or from an interlocutory order by the court. Being a criminal proceeding, the Governor had the authority, under the Constitution, to issue his proclamation remitting, extinguishing, cancelling, and releasing the forfeiture of the bond and the judgment rendered thereon by the Lower Court, and said Proclamation also had the same effect as to the costs in the case.

The judgment of the Lower Court is reversed and said forfeiture is set aside.

Justice HOLT not participating.

Justice McFADDIN dissenting.

ED. F. McFADDIN, Associate Justice (dissenting). The Majority Opinion in the present case follows the Majority Opinion in *Tinkle* v. *State,* 230 Ark. 966, 328 S. W. 2d 111. In fact, the Tinkle case would probably have to be overruled in order to reach any other conclusion except that reached by the Majority in the present case.

But I dissented in the case of *Tinkle* v. *State,* and I dissent in the present case: because I am thoroughly convinced that my dissent in *Tinkle* v. *State* was and is correct, and I persevere in that view by dissenting in the present case in the hope that at some time *Tinkle* v. *State* will be overruled.